UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re

     Robert M. Manko
     Cynthia A. Manko                           Case No . 11-14123 K

                            Debtors
-------------------------------------------------------------------
William Cowell

                            Plaintiff
            -vs-                           AP No. 12-1013 K

Robert M. Manko
Cynthia A. Manko
                            Defendants
-------------------------------------------------------------------


OPINION, DECISION, AND ORDER
GRANTING SUMMARY JUDGMENT OF DISMISSAL



Robert B. Gleichenhaus, Esq.
Gleichenhaus, Marchese & Weishaar, P.C.
930 Convention Tower, 43 Court Street
Buffalo, NY   14202

Attorney for Plaintiff

Joanne A. Schultz, Esq.
6580 Main Street
Williamsville, NY   14221

Attorney for Defendants

## SUMMARY

This is a challenge to the Debtors' discharge of a particular debt.  It is an 11 U.S.C. § 523 case.

After the close of discovery in this Adversary Proceeding, and after the Debtors filed the present Motion seeking "Dismissal under Rule 12" and "Dismissal on the Merits" under Rule 56, and <u>after a Motion to Compel and the lapse of an Order Compelling,</u> the Plaintiff finally offered a glimmer of evidence to suggest that these Debtors schemed to defraud him out of his tree trimming business, a business which he valued at perhaps as much as $600,000, as described below.  Now he wishes another chance at discovery to find something that might let him get to trial, but it is too little, too late.

(There has been no trial in this case, but the Court agrees with the Debtors that the Plaintiff cannot overcome their Rule 56 Motion to Dismiss.  Almost none of what the Court now supposes to be the "facts" as claimed by the Plaintiff actually support his case.  The Court might  seem to be giving more weight to the Plaintiff's case than it deserves (given the length and scope of this Decision), but it does so because it is clear that the Plaintiff's sense of having "been wronged" at the hands of these Debtors has emanated in large part from various lawyers' opinion that this Court has what those lawyers told him is a "relaxed" view of the

Rules of Procedure, and that that "relaxed" view will permit the Plaintiff to prevail here.[1]

## DISCUSSION

### Some of the "matters of fact."

We will begin with what we seem to know.  The Debtor, Robert Manko, is an insider (11 U.S.C. § 101(31)) of a *de jure* corporation named Manko Construction Services, Inc. The Court does not know whether the Debtor Cynthia Manko is also an insider of that corporation.  There is at least one other Manko family member involved in that corporation - - David Manko, who apparently is Robert's brother.  According to an April 22, 2013 Affidavit by Robert Manko there came a time in the year 2003 when Robert and David considered acquisition of the Plaintiff's tree trimming business - ABC Tree Company, Inc.  (Apparently also a *de jure* corporation.)  Whether it might be a purchase of ownership of ABC (i.e. a purchase of the corporate shares), or an Asset Sale, and who the buyer might be (Robert or David or the Manko Corporation, or a Newco, etc.) are matters not addressed in the affidavit.

In that year, the Plaintiff was trying to maintain ABC while also seeking to be a film maker and producer, and a promoter of film festivals.  It seems that because of the Plaintiff's preoccupation with his movie aspirations, Manko Construction Services and/or the Mankos took an active role in ABC and worked collaboratively with the Plaintiff to keep ABC

---

[1]See footnote 12, below.

alive while the Mankos were conducting due diligence regarding the possible acquisition. Two

specific examples of this are a year 2003 bid for tree removal submitted to the City of Buffalo,

N.Y. and a year 2004 bid to the City of Toledo, Ohio for tree removal. Both were apparently

prepared by Robert or David or both (with the consent and assistance of the Plaintiff), and

initially submitted in the name of ABC Tree Company. It is important to the Plaintiff's theory

that the Buffalo tree contract was eventually awarded to the Manko Corporation, not to ABC,

as discussed below. (It should be noted that this "fact" and theory were presented to the Court

only after every deadline for production of discovery had lapsed.)

      The Plaintiff now argues that $600,000 was to be paid by some Manko or Manko

affiliate to acquire ABC or its assets - - about $300,000 to satisfy the liens on ABC's

equipment, plus $300,000 to be paid to the Plaintiff over a period of time.[2] Consequently, he

considers his non-dischargeable damages to be in that amount.[3]

      Despite his hope to receive this significant sum, he did not retain an attorney or

any other professional to guide him or represent him toward contracting-for and

accomplishing that potential sale. Instead, the Mankos were free to explore the assets and

operations of ABC. According to Debtor Robert Manko's Affidavit, Robert and David went to

ABC's site and talked to ABC's employees. They learned that ABC's equipment was in

---

[2]He asks that the Court infer these things by reason of an Asset Purchase Agreement that is not in evidence. This too is discussed below.

[3]He obtained a default judgment against the Debtors (in state court) on June 23, 2009 in the amount of approximately $510,000 plus interest. Again, this will be addressed below.

disrepair, and some necessary equipment was inoperable.  They learned that ABC's employees were being paid "off-the-books" (thereby casting doubt on ABC's financial statements.[4])  They consulted with an accountant and with Key Bank.  They examined the liens held upon ABC's equipment by "Peter Makita" from Wisconsin (presumably a Makita dealership owned by someone whose last name is "Peter.")[5]

In the meantime, it seems that in or around June, 2003, the Plaintiff needed some money to support his movie aspirations, and $34,800 was sent to him on or about July 2, 2003.[6]  That money was drawn upon the account of Debtor, Cynthia Manko.  She attests that because the money came from her own savings account, she had to sign the checks; but she is emphatic under oath that she never had any other connection or dealing with the Plaintiff.

After deciding against the acquisition of ABC in 2004, Manko Construction Services, Inc. ("MCS") and Robert and Cynthia Manko sued the Plaintiff in state court for the return of the $34,800.  That was on September 24, 2004.  Their counsel eventually withdrew from the state court proceeding because (according to Robert's affidavit) "My wife and I were separated and I never received the notice.")  The Plaintiff counterclaimed in some amount and upon some theory not disclosed to the present Court.  To repeat, the Plaintiff here was a

---

[4]Obviously, if financial statements reflect profitability after payment of all payroll taxes, etc., finding that payroll taxes, etc. are not being paid calls those statements, and thus profitability, into question.

[5]Again, none of these are "facts" found after trial or evidentiary hearing.  Rather, they are the Debtor's sworn allegations of fact that are not contradicted by the Plaintiff.  Rule 56, F.R.Civ.P. controls.

[6]It is unclear whether the $34,800 was sent as a consequence of a request by the Plaintiff or whether it was sent earlier, as a "deposit" toward the possible acquisition.  See below.

defendant in state court.  Having been sued there for return of the $34,800 (and another minor

claim), he won a half-million dollar judgment on his counterclaim.  However, and critically, it

was by default.  The Plaintiff wisely has not argued that that default judgment has preclusive

effect for purposes of dischargeability under 11 U.S.C. § 523.[7]  Rather, he set out to argue the

merits of his claim against the Debtors, and if he had used "discovery" to elicit facts that would

support his case, he might have gotten to trial here.  But the record before the Court stands;

there is nothing in his favor.  To say that his case against the Debtors is "circumstantial"

overstates its strength, now that discovery has closed.

 For example, in his response to the Debtors' Motion for Summary Judgment, his

counsel uses the word "somehow" to describe the fact that David Manko (the brother of the

Debtor Robert Manko) "got himself" (meaning David Manko) and Manko Construction

Services, Inc. "onto" the contract that was awarded by the City of Buffalo for tree removal.

There should have been no "somehow" left about that matter while discovery was still open.

That award  was the result of a public contracting process.  The Plaintiff clearly could have

learned how it came to pass that the bid submitted in the name of ABC Tree Company ended

up being awarded to Manko Construction Services, Inc. and David Manko (not this Debtor

---

[7] If this were simply the Debtor's objection to the Plaintiff's judgment, *In re Andrijevic, Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987)  would bind this Court in the Plaintiff's favor.  But this is very different.  See, for example *Nowak v. Pillich, (In re Pillich), No. 96-1150 slip op. (Bankr. W.D.N.Y., Nov. 6, 1996).*  Essentially, a default judgment on a contract claim will not preclude a debtor from a defense in a § 523 complaint that sounds in tort.

This Court does not know whether the Plaintiff's counterclaim in state court, the claim upon which he won the default judgment, sounded in contract or in tort.  But that is because the Plaintiff did not offer his state court pleadings here in support of his current claim.

Robert Manko), if that indeed is true.  The Plaintiff simply asks that the Court surmise that that

contract demonstrates that  <u>Robert</u> and <u>Cynthia</u> Manko (these Debtors) were part of a

nefarious scheme which has a non-dischargeable monetary consequence. [8]

      Similarly, the Plaintiff uses the word "mysteriously" (in his opposition to the

Debtors' Motion) to describe the fact that one of ABC's listings in a phone book was changed

to Manko Construction Services while he was dividing this attention between ABC and cinema.

It ought not to have remained "mysterious" by the time that discovery closed.  He had ample

opportunity to depose the Debtors during discovery about their side of that story, and to

investigate such a change with the phone directory (by force of subpoena if necessary).  The

"mystery" ought to have been solved, and replaced with evidence that would suffice under

Rule 56.

      The Plaintiff did not employ a single one of the powerful tools of discovery to

support his own case-in-chief.  Even the Court wonders whether the Buffalo and Toledo

contracts were performed.  If they were, then where did the proceeds go?  Was ABC

equipment used?  Were  ABC employees used?  Where is the equipment now?  But courts are

neither investigators nor advocates.  It was for the Plaintiff to have done some discovery - - any

discovery - - to support his case.

---

[8]Robert Manko's affidavit swears that ABC was ineligible to receive the Buffalo contract  because ABC  was not bonded.  Perhaps that explains the reason for the substitution of Manko Construction Corp. for the ABC Corp.  It would not explain the <u>procedure</u> for that substitution. Had the Plaintiff deposed David Manko or examined the public record to find out why the substitution occurred, there would be no "somehow" about it.

Document      Page 7 of 16

<u>The Motion to reopen discovery.</u>

In his response to the Debtor's dispositive motion the Plaintiff moves to reopen

discovery.  He attached several documents purportedly signed by these Debtors.  It is

undisputed that those were not produced before the close of discovery.  Indeed, it is

undisputed that when two or more of those documents were produced <u>during</u> discovery, they

did not purport to contain any signatures of these Debtors - - in other words, they were <u>blank</u>

at the signature lines when they were produced in <u>timely</u> response to discovery deadlines.

The Debtors objected to the late-proffered documents not only as "untimely,"

but also as "forgeries," and they objected to a reopening of discovery.   The Court

consequently ordered a hearing which  was conducted on July 23, 2013.  The express purpose

was to determine whether the proffered documents were time-barred, whether they would be

admissible at a trial, whether discovery should be reopened, etc.

The first two late-proffered documents are totally innocuous even if the

signatures were not disputed.  One of them purports to be an acknowledgment by Mr. Manko

that the Plaintiff assisted in the preparation of the bid for tree removal submitted to the City of

Buffalo, N.Y. and the City of Toledo, Ohio.  Mr. Manko has essentially <u>stipulated</u> that he

worked collaboratively with the Plaintiff while considering the acquisition of ABC.  That

proffered document offers nothing to the case, even if the Court were to admit it  into

evidence.

The second document  purports to be permission from Mr. and Mrs. Manko  to

use the $34,800 referenced above toward the production of a particular movie, which movie

never in fact came to fruition.  It seems likely that that document was presented in the state

court when the Plaintiff was defending the action originally brought by the Mankos against

him, by which they sought the return of that money.  (Obviously such a document could

possibly absolve the Plaintiff here (who was the defendant there) of any liability in that suit, in

that it might demonstrate some form of "investment" in the film, rather than a loan to the

Plaintiff or a "deposit" toward the purchase of ABC Tree.)[9]  It has no relevance in this

dischargeability action.  (The Chapter 7 Trustee here has not asserted any claim against the

Plaintiff for that money as a debt owed  to these Debtors' Chapter 7 estate.)

A third document - - purported to be an Asset Purchase Agreement  at a price of

$600,000 - - not only was offered late, but is not even alleged to have been signed by either of

these Debtors.   Rather it is alleged to have been signed by David Manko on behalf of "ABC

Tree Co., LLC."  an entity to be formed.

This causes us to  move now from what we think we know to what we are sure

we know little or nothing about, in regards to the Plaintiff's Motion to Reopen Discovery.

First, we have no useful proffer as to what the understanding was among Manko

Construction,  Corporation, the Debtors, David Manko, and the Plaintiff as to their joint efforts

---

[9]In this regard, the Debtors' arguments are not consistent as between the state court and this Court. In this Court they claim that the money was a loan for the movie.  In the state court they claimed that it was a refundable deposit as to the contemplated purchase of ABC.  It is not clear why the Debtors vividly remember loaning the money to the Plaintiff to help him on a movie proposal, given that their attorney in 2004 sought return of the money as a deposit on the possible acquisition.  (The court recognizes that recollections may change over the course of years.)

to sustain ABC as a viable tree-related business while the Plaintiff was pursuing a film career,

and while Manko interests were deciding whether to buy ABC or some aspect of ABC. Neither

side even scribbled out some form of memorandum (let alone actually retain counsel).[10]

       Point 2. Because the Court has not been provided with the Answer filed by the

Plaintiff in the state court action, it does not know what theory he asserted when he was the

<u>defendant</u> in state court, counterclaiming for a six-digit dollar amount for the loss of his

business.

       Point 3. Apparently, all three of the plaintiffs in the <u>state court</u> action against

this Plaintiff (when he was the defendant) were represented by one counsel, and they all

continued to be represented by that counsel after the six-digit counterclaim was asserted. In

some way that the Court does not know, some attorney or firm missed or ignored the need to

answer the counterclaim, and (thus) to contest the entry of default judgment against these

Debtors (as well as against Manko Construction Corp.).

       And Point 4. We do not know is who is to blame for the <u>Plaintiff's</u> failure to

make meaningful discovery <u>here,</u> whether in a timely fashion or not. [11]

---

[10]As just noted, the Plaintiff did timely produce what on its face is stated to be a "Draft" APA at a $600,000 price, but neither these Debtors nor the Manko corporation are mentioned therein. It seems to have contemplated the formation of a Newco (ABC Tree Co., LLC) of which David Manko (not this Debtor) would be President. The source of the document has not been made known to this Court. Perhaps a lawyer. Perhaps a very good Internet product. There is nothing offered by the Plaintiff to suggest its source or date.

[11]The Plaintiff asserts that his failure to conduct discovery in this dischargeability proceeding resulted from confusion as to the relative responsibilities of two law firms. Unfortunately for the Plaintiff, any confusion on the Mankos' part that led to a money judgment against the Debtors in state court upon a <u>dischargeable</u> theory of recovery <u>does not reduce the Plaintiff's burden of proof</u> of "fraud" or "wilful and malicious injury" in dischargeability litigation under the Bankruptcy Code. In other words, a default judgment upon a "contract cause of action" in a state court is easy, but winning a "dischargeability action" in a

As to the late-proffered documents, the Plaintiff states that he thought that his state court counsel was handling discovery here, but he ran across the documents when looking for something else in his records.  His counsel's argument is that if the Court would reopen discovery as stated above and allow the late-proffered materials in support of the Plaintiff's effort , his firm will find lots of evidence in his client's favor.  And if not finding such evidence, then counsel will break the Debtors down by skillful cross examination of them and of their witnesses.

For the Court to accept that argument would be in derogation of F.R.Civ.P. Rule 1 which states, in pertinent part, that the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."  To this Court, that command requires that pre-trial matters proceed in an orderly fashion.   Plaintiff's counsel's argument is a recipe for <u>disorder.</u>  That recipe is this - - First, pay little or no attention to the rules that require production of materials during discovery (even as to an Order Compelling) (2) and do not avail yourself of the opportunities provided to you to demand discovery, then (3) wait until your opponent has put together  a dispositive motion which lays out all of your opponents' defenses and supporting evidence, then (4) argue that "newly-discovered" "evidence" warrants reopening of discovery.   Not just so that the challenged documents may be admitted for Rule 56 purposes, but for <u>all</u> purposes.  And, in the end, give a plaintiff a "free pass" to trial so that his counsel may have the opportunity to catch defendants (or their witnesses) in lies or

---

bankruptcy case can be hard.

other bad conduct on the witness stand.

CONCLUSIONS OF LAW

There are two aspects to the Plaintiff's request to reopen discovery: (1) to forgive his failure to obey the Order Compelling, so that the late-proffered documents discussed above (and perhaps others not yet known) may be offered in opposition to the Debtors' Motion for Summary Judgment, and (2) to permit him to demand discovery of the Debtors (and, perhaps, others).

As to the proffered documents and the first aspect, the Plaintiff argues that the documents are "newly discovered evidence." It is the Court's view that following that notion leads in the wrong direction. "Newly-discovered evidence" is a term of art in the context of relief from a final judgment or order under Rules 59 and 60, F.R.Civ.P. and Rule 66, R.F. Crim.P.

Rather, the Court deems the two aspects of the Plaintiff's prayer to be just one issue. What does Rule 56(f) require in the context of this case? In other words, should discovery be reopened for the Plaintiff, or not?

The cases in the Second Circuit are clear, and they bind this Court. For over 25 years it has been held that a party raising the need for additional discovery in a civil case under Rule 56(f) must explain:

1. The nature of the uncompleted discovery; i.e. what facts are sought and how are they to be obtained.

2.  How those facts are reasonably expected to create a genuine issue of

material fact.

3.  What efforts the party who seeks to defeat the Rule 56 motion has made to

obtain those facts, and

4.  Why those efforts were unsuccessful.

(*Burlington Coat v. Esprit*, 769 F.2d 919 (2d Cir. 1985). See also *Trebor v. The

Limited*, 865 F.2d 506 (2d Cir. 1989)  (stating that under Rule 56(f) the trial court may properly

deny further discovery if the nonmoving party has had a fully adequate opportunity for

discovery, and citing the U.S. Supreme Court at 391 U.S. 253, 290-299.)

These authorities compel the following findings.

(A) As to the challenged documents, the Court rejects the notion that they

constitute a Rule 56(f) defense.  The Plaintiff's testimony is that he did not look thoroughly

enough into his books and records in responding in a timely fashion to the Defendant's

discovery demands because he thought his state court lawyers had the responsive materials.

He attests that It was only when he was examining a different box of records for a different

purpose that he found these "executed" copies of documents that he had produced "in blank"

before.  The Court finds that he did not exercise due diligence in responding to the

Defendant's discovery demands.  (See, for example, *McCormack v. Citibank, N.A.* (8th Cir.

1996); *Alpern v. Utilicorp United, Inc.* (8th Cir. 1996).[12]

(B) Whatever new matters the Plaintiff would like to discover <u>now</u>, should have been the subject of discovery demands on his own behalf before the lapse of the initial discovery deadline, or, at the very latest, in response to the Defendant's Motion to Compel. (To remind the Bar, this is a Motion for Summary Judgment. The Motion to Compel came months <u>before</u>. At the very latest, <u>that</u> Motion's return date was the time to ask for an extension of time.)

(C) At the hearing in July, 2013, the Court asked what made this case so different from the many cases that this Court has seen in which a possible acquisition did not occur, but no dischargeability litigation arose out of that collapse. The Plaintiff argued, through counsel, that the difference is that in the typical case of an aborted acquisition the prospective seller is still left with his business to sell. Here, he says, ABC Tree "no longer has a business." The Court wonders, however, why the Plaintiff has not offered any evidence of value of ABC at any

---

[12]There is some suggestion by Plaintiff's counsel that when the Court granted the Debtors' Motion to Compel and gave the Plaintiff until January 18, 2013, to provide discovery, that Order also extended the time within which the Plaintiff could make new discovery demands upon the Debtors. It did not. (Furthermore, even if it <u>had</u> done so, the Plaintiff made no new demands within that deadline.) Plaintiff's counsel argues that there is a "relaxed" and "collegial" attitude in this Court toward litigation deadlines, and that his client should have discovery reopened as a consequence. Counsel grossly misunderstands the meaning of what this Court agrees is a "relaxed" and "collegial" approach to preparation for trial here. It seems that counsel believes that defaults under the Rules are off-limits for litigation, or will be ignored when the Rules are litigated. Nothing could be further from the truth. To the extent that pretrial deadlines are "relaxed" and collegial here, that often emanates from counsel, who respect one another's efforts and time limitations. And so they let deadlines slide for one another. Some judges insist upon their own case-management deadlines. But this writer rarely does so. Knowing the waste involved in Rules litigation, this writer does encourage such collegiality and flexibility. But when a deadline is actually litigated, as it is here, the notion that this or any other judge will decline to rule against a party because the opposing party's lawyer thought that this Court's deadlines are mere suggestions, is mistaken, at least where, as here, the moving party has done everything the Rules require, and has done so at meaningful expense.

time at all. (Essentially 2003 and 2004.) As stated above, the Court knows very little about

ABC. What the Court does know about ABC came from the Affidavit of the Debtor. [The

Robert Manko Affidavit.] The Plaintiff offers no evidence of the value of ABC other than the

fact that that price was mentioned in a document that was never signed by either of these

Debtors, that contemplated a Newco of which David would be president, was produced late,

lacks foundation, and does not satisfy Rule 56 in those and other regards.

Finally, the Court cannot ignore the fact that reopening discovery without

payment of the legal fees and other costs to the Debtors if discovery were to be reopened

(e.g., sitting for deposition in consultation with counsel, lost wages) would be prejudicial to

them.)[13]

The Debtors' Motion for Summary Judgment of Dismissal is granted. All of the

other claims asserted by the Plaintiff against the Debtors have been considered and are

rejected, as are the Debtors' counterclaims against the Plaintiff (which, as noted above,

belonged to the Chapter 7 Trustee, who chose not to pursue them).

Because this matter arose out of the conduct of a business, 11 U.S.C. § 523(d)

---

[13]When the Court ordered the June 27, 2013 (eventually adjourned to July 23) hearing, it stated that if the Plaintiff's request to re-open discovery were to be granted, then the Court might condition that grant upon the Plaintiff's payment of the Debtors' attorneys fees to the extent that those fees were a natural result of the Plaintiff's defense to the present Motion. Because the Plaintiff's request is denied, and the Debtors' Motion to Dismiss the Complaint is now granted, there is no need to address the fee issue.

does not apply.  The parties shall bear their own costs.

        SO ORDERED.

Dated:       Buffalo, New York
              January 10, 2014

                                  s/Michael J. Kaplan

                              _____

                                      U.S.B.J.